IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DILLON KING and ALLISON KING, | ) |
| Plaintiffs, | ) |
| v. | ) NO. 1:24-cv-00047 |
| RAE PRODUCTS, | ) JUDGE CAMPBELL |
| | ) MAGISTRATE JUDGE HOLMES |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant's motion for summary judgment on Plaintiff Dillon King's claims (Doc. No. 27), which is fully briefed. (*See* Doc. Nos. 50, 57). For the reasons stated herein, Defendant's motion is **GRANTED** in part and **DENIED** in part.

I. FACTUAL BACKGROUND[1]

Plaintiff, a male, brings this action against his former employer Defendant for subjecting him to a hostile work environment and retaliating against him for exercising his civil rights. Defendant Rae Products ("Rae") manufactures spiral paper tubes and cores. Plaintiff initially worked for Rae as tube stacker but was later moved to a rebut machine. William Tennant ("Tennant") worked for Rae as a forklift or tow motor operator in shipping and receiving. Plaintiff's mother, Plaintiff Allison King, also worked for Rae.

In February 2022, Tennant began training Plaintiff. At this time, Tennant started making comments to Plaintiff that he looked cute and that he liked the way Plaintiff dressed. Tennant told

---

[1] At this stage, the Court construes the factual record in the light most favorable to Plaintiff, the nonmoving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025). The factual background in this Memorandum is not a complete statement of the material facts in this case but rather includes the facts necessary for the Court's analysis and resolution of the pending motion.

Plaintiff that he had a dream about waking up in bed with Plaintiff, and, a week later, Tennant walked up beside Plaintiff in the breakroom and told him: "my dick will fit in that hole." During a house party held on February 21, 2022, one of Plaintiff's coworkers told him that Tennant wanted to have sex with him and that she was tired of hearing about it. Plaintiff left the party early and told his mother what had happened.

The next day at work, February 22, 2022, Tennant argued with Plaintiff so loudly that a supervisor (who was also one of Rae's owners) heard them from outside the production area and told them not to work together anymore. Later the same day, Plaintiff's mother informed the same supervisor/owner of Tennant's sexual comments to and about Plaintiff and her believe that Tennant was upset and going after Plaintiff for turning him down.

After February 22, 2022, Tennant stopped training Plaintiff. Tennant then started parking his tow motor in Plaintiff's way on the production floor so that Plaintiff could not do his job. Tennant would give Plaintiff a "death stare" or quickly flick the blade on his pocket knife every time he walked past Plaintiff. Additionally, Tennant started mouthing "fuck you" to Plaintiff and parking where Plaintiff normally parked.

Plaintiff's mother made a sexual harassment complaint against Tennant on Plaintiff's behalf in April 2022, after which Plaintiff advised Rae's Human Resources Consultant of Tennant's unwanted sexual comments towards him and the change in Tennant's behavior towards Plaintiff after he expressed his lack of sexual interest in Tennant. (*See* Doc. No. 34-7 at 211 ("…you felt the verbal hostility was related to your declining his sexual interest in you. You report that when [Tennant] became hostile toward you, using profanity and complaining about work performance, you felt unsafe.")). The HR Consultant counseled Tennant to refrain from any conduct that could be considered unwanted and warned that any further episodes of verbal hostility

toward a coworker, owner, or vendor would result in disciplinary actions that could include termination. (*Id*. at 211-14).

After Plaintiff's mother made the sexual harassment complaint on his behalf in April 2022, Plaintiff and his mother were both excluded from a plantwide pay increase in May 2022. On June 14, 2022, Plaintiff's mother complained that Rae's excluded her and Plaintiff from the plantwide pay increase in retaliation for making the sexual harassment complaint against Tennant. Shortly thereafter, the HR Consultant began investigating Plaintiff's mother for potential timesheet falsification and put her on leave through July 28, 2022.

On Thursday July 7, 2022, Tennant started cursing and yelling at Plaintiff for touching an A/C device. The HR Consultant subsequently met with Tennant and Plaintiff for a "disciplinary counseling session." Plaintiff called Tennant a "pedophile" during the meeting, after which the HR Consultant sent Plaintiff home for the rest of day and the day after. Plaintiff submitted his two weeks' notice on Monday, July 11, 2022.

Plaintiff filed the present action on May 7, 2024, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Tennessee Human Rights Act ("THRA"), and 42 U.S.C. § 1983. (*See* Doc. No. 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element

3

Case 1:24-cv-00047    Document 59    Filed 10/22/25    Page 3 of 11 PageID #: 1792

of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id*. The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

Rae seeks summary judgment on the grounds that the THRA claims are time-barred, and that Plaintiff lacks evidence to make a prima facie case of retaliation or sexually hostile work environment under Title VII. The Court will take up Rae's arguments in turn.

#### A. THRA Claims

THRA claims are subject to a one-year limitations period beginning when the alleged discriminatory and/or retaliatory activity ceases. *See* Tenn. Code Ann. § 4-21-311(d) ("A civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases ...."). Unlike for Title VII actions, the filing of an EEOC charge does not toll the statute of limitations on THRA claims. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). In *Weber v. Moses*, 938 S.W.2d 387 (Tenn. 1996),

the Tennessee Supreme Court affirmed the dismissal of the plaintiff's THRA claim as time-barred, based on the finding that the statute of limitations began to run on the date the plaintiff received oral notification that his sales manager contract would terminate, rather than three weeks later, on the effective date of the termination, or the day after the termination, when the plaintiff received written notification of termination in accordance with his contract. The court's decision was based on its conclusion that the employer's decision to terminate the plaintiff's sales manager contract for discriminatory reasons was the discriminatory practice prohibited by the THRA and that the plaintiff had notice of that wrongful action, for purposes of the commencement of the limitations period, when he received oral notification of the decision. *Id*. (citing (among other cases) *Chardon v. Fernandez*, 454 U.S. 6 (1981), and *Delaware State College v. Ricks*, 449 U.S. 250 (1980)). The *Weber* court held unequivocally that "a discriminatory termination ceases and is complete ... when the plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future." *Id*. at 391–92.

Here, the statute of limitations began to run (at the latest) in July 2022, when Plaintiff's employment ended. However, Plaintiff did not file the present action until May 7, 2024, more than a year after the end of his employment. Accordingly, Plaintiff's THRA claims are barred by the one-year-statute of limitations and Rae is **GRANTED** summary judgment on his THRA claims.

B. Title VII Claims

Title VII prohibits an employer from "discriminat[ing] against any individual ... because of such individual's race, color, religion, sex, or national origin" as well as from retaliating against an employee for engaging in conduct protected under the statute. 42 U.S.C. §§ 2000e–2(a)(1), 3(a); *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019).

As noted above, Rae challenges Plaintiff's ability to establish a prima facie case of a sexually hostile work environment and retaliation. A plaintiff may rely on either direct or circumstantial evidence to establish these claims. *See Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021); *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Here, Plaintiff relies on circumstantial evidence to support his claims. Accordingly, to determine whether summary judgment is appropriate, the court will "apply the three-part burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775–76 (6th Cir. 2016).

1. Employment Discrimination – Hostile Work Environment

To prevail on a hostile work environment claim under Title VII, an employee must show that: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on their membership in the protected group; (4) the harassment created a hostile work environment; and (5) the employer is liable. *See Doe v. City of Detroit, Michigan*, 3 F.4th 294, 300 (6th Cir. 2021).

Rae, as the party bringing the summary judgment motion, has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). Rae may satisfy its burden by presenting affirmative evidence that negates an element of Plaintiff's discrimination claim or by demonstrating an absence of evidence to support Plaintiff's case. *See id.* Here, Rae does not dispute that Plaintiff can satisfy the first three essential

elements of his hostile work environment claim. Instead, Rae attempts to show the absence of evidence as to the fourth and fifth elements of Plaintiff's prima facie case.

      a.   <u>Whether the harassment created a hostile work environment – Element Four</u>

For his hostile work environment claim, Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ...." *Strickland v. City of Detroit*, 995 F.3d 495, 505 (6th Cir. 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Hostile work environment claims "are based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see id*. ("Their very nature involves repeated conduct."). Thus, courts "must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive." *Strickland*, 995 F.3d at 506; *id*. ("The harassing conduct cannot be viewed in isolation."); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562-63 (6th Cir. 1999) ("the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case.") (emphasis in original). Factors relevant to this analysis include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Whether conduct is severe or pervasive is "quintessentially a question of fact." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333-34 (6th Cir. 2008) ("Summary judgment is appropriate only if the evidence is so one-sided that there is not genuine issue of material fact as to whether there was a hostile work environment.").

Although Rae contends that "the facts do not establish the existence of 'severe or pervasive' harassing behavior," it fails to articulate a substantive argument in support of that contention. Instead, Rae identifies evidence of sexually harassing conduct and merely states those facts fail to satisfy the legally required standard. (*See id*. at 14-16). Notably absent from Rae's supporting memorandum is any discussion as to *why* the evidence in the record does not show sufficiently severe or pervasive harassing conduct for purposes of a hostile work environment claim. As Rae's motion is devoid of independent analysis applying the law to the facts of this case, it fails to show the absence of evidence for this element of Plaintiff's hostile work environment claim or that it is entitled to summary judgment as a matter of law. Accordingly, the Court turns to Rae's challenge of Plaintiff's proof for the fifth essential element of employer liability.

b. <u>Employer liability – Element Five</u>

To show employer liability in the case of a harassing co-worker, an employee "must show that the employer knew or should have known of the conduct and failed to take prompt and appropriate corrective action." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016). "The appropriate corrective response will vary according to the severity and persistence of the alleged harassment." *Doe v. City of Detroit, Michigan*, 3 F.4th 294, 301 (6th Cir. 2021)

Here, Rae claims Plaintiff cannot show that it failed to take immediate and appropriate corrective action in response to Tennant's sexually harassing conduct because it took investigational interviews in April 2022 and provided corrective counseling to Tennant. (*See* Doc. No. 36 at 17). However, the foregoing fails to demonstrate Plaintiff lacks evidence showing Rae "knew or should have known of the conduct and failed to take prompt and appropriate corrective action" because it ignores the evidence that Plaintiff's mother notified one of Rae's owners of Tennant's harassing conduct towards Plaintiff in February 2022. Viewing the facts in the light most

8

favorable to Plaintiff and drawing reasonable inferences in his favor, a reasonable jury could conclude that Rae "knew or should have known" of Tennant's harassing conduct by February 22, 2022, and that its response over a month later in April 2022 was neither prompt nor appropriate.

2. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected activity; (2) the employer knew of the protected activity; and (3) the employer took an adverse employment action against him because of his protected activity. *Huang v. Ohio State Univ.*, 116 F.4th 541, 561 (6th Cir. 2024). An adverse employment action includes any conduct "that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021). It is well established that, "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices" is protected conduct under Title VII. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000); *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009). Assisting or participating in any manner in a Title VII investigation, proceeding, or hearing is also conduct protected under Title VII. 42 U.S.C.A. § 2000e-3(a). When analyzing the prima facie case, a court "may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action." *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013). The Plaintiff's burden at the prima facie stage is "minimal." *Wyatt*, 999 F.3d at 419. Rae submits that the basis for its motion as to Plaintiff's retaliation claims is that Plaintiff lacks evidence of causation for his *prima facie* case or pretext.

Here, the chronological occurrence of events and the close temporal proximity between Plaintiff's protected conduct in April 2022 – participating in Title VII sexual harassment investigation and complaining of a retaliatory hostile work environment – and Rae's subsequent

exclusion of Plaintiff and his mother from a plantwide pay increase in May and Rae's decision to send Plaintiff home from work in early July shows Plaintiff can produce evidence at trial showing causation for purposes of his *prima facie* case. *See George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020). Thus, Rae has failed to demonstrate the absence of evidence as to this element or that it is entitled to judgment as a matter of law.

Nevertheless, if it can "clearly set forth, through the introduction of admissible evidence," a legitimate, non-retaliatory reason for its employment decision, then the burden shifts back to Plaintiff to show pretext. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "An articulation not admitted into evidence will not suffice." *Id*. at n.9. If the defendant meets its burden of production, the plaintiff must demonstrate that the proffered reason was not the true reason for the adverse action. *See id*. at 256 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973)).

Rae attempts to meet its burden of production by pointing to its HR Consultant's deposition testimony that "Rae Products was needing to make market adjustments to be able to hire new employees" as its legitimate non-retaliatory reason for its decision to exclude Plaintiff from the plantwide pay increase. (*See* Doc. No. 36 at 20). Viewing the facts in the light most favorable to Plaintiff as the nonmoving party and drawing reasonable inferences in his favor, the foregoing evidence does not "clearly set forth" a reason for Rae's decision to exclude Plaintiff from the plantwide pay increase. Because Rae has failed to meet its burden at step two of the *McDonnell Douglas* framework, the Court does not reach pretext.

In sum, summary judgment in Rae's favor on Plaintiff's Title VII retaliation and hostile work environment claims is inappropriate because Rae has failed to show that Plaintiff lacks evidence to support those claims or that it is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. No. 27) is **GRANTED** as to Plaintiff Dillon King's THRA claims and is **DENIED** in all other respects.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE